UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| GARY REDDEN, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:17-CV-139-SNLJ |
| | ) |
| BRANDON SMITH | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Brandon Smith's motion to dismiss (#11). The matter is fully briefed, and the motion will be granted in part and denied in part.

I.  Background

At the motion-to-dismiss stage, the Court pulls the facts from the Petition (#4). Back in 2014, the Pemiscot County Sheriff's Department responded to a call about a house fire. A deputy sheriff questioned plaintiff (a minor) and his father at the scene. Then, a Missouri State Fire Marshall Investigator arrived and assisted with the investigation. He directed plaintiff and his father to the Pemiscot County Justice Center for more questioning.

Once there, defendant (a Pemiscot County Deputy Juvenile Officer) interviewed plaintiff with his father present. Next, the officer told plaintiff's father to leave the interview room and arranged for plaintiff to be transported to Lakeland Behavioral Health Systems, in Springfield, Missouri. In restraints and at the officer's direction, plaintiff

1

was taken from the Pemiscot County Justice Center to Lakeland Behavioral Health Systems. Neither plaintiff nor his father consented to this, and the officer orchestrated plaintiff's transport without a court order or judicial intervention of any kind.

Thirty-two days later, the officer finally filed a petition with the Pemiscot County Circuit Court, Juvenile Division, alleging that plaintiff needed care pursuant to § 211.031 RSMo. Section 211.031 provides that juvenile or family courts have exclusive original jurisdiction (in certain circumstances) over proceedings involving minors who allegedly need care and treatment. § 211.031.1(1) RSMo.

Six days later, plaintiff appeared before the Juvenile Court, which ordered that he be released to the custody of his father. About a month later, the Juvenile Court dismissed the petition the officer filed against plaintiff.

Plaintiff sued the officer in both his official and individual capacity, alleging the officer violated his Fourth Amendment right to be free from unreasonable seizures. Plaintiff also alleges the officer violated Missouri law by falsely imprisoning him. In sum, plaintiff claims there was no legal justification to detain him without an order from the Pemiscot County Juvenile Court.

## II. Legal Standard

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the sufficiency of a complaint and eliminates those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual

content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (alteration in original) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (*quoting Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)).

### III. Discussion

Plaintiff brings a § 1983 claim and a state-law claim. The Court addresses each separately.

#### A. 42 U.S.C. § 1983—Fourth Amendment Violation

Plaintiff sues the officer in both his official and individual capacity.

##### 1. Official Capacity

The officer argues that plaintiff's official-capacity § 1983 claim should be dismissed because he is entitled to sovereign immunity under the Eleventh Amendment. The officer claims the official-capacity claim must be dismissed because plaintiff seeks monetary damages from him. The officer is correct. *See Brown v. Hancock*, 4:10-CV-2045-HEA, 2011 WL 4528459, at *2 (E.D. Mo. Sept. 29, 2011). "The Eleventh Amendment immunizes the states from suit, thus, neither a state nor its officials acting in their official capacities are 'persons' under § 1983 when sued for damages." *Id.* (*citing Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989)). Plaintiff's official-capacity claim must be dismissed.

##### 2. Individual Capacity

The officer argues that plaintiff's individual-capacity § 1983 claim should be dismissed because he is entitled to qualified immunity. "[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (*quoting Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). This prompts two questions: (1) did the "defendant official violate a constitutional or statutory right" and (2) "was the right clearly established when the violation occurred?" *Payne v. Britten*, 749 F.3d 697, 707 (8th Cir. 2014) (Riley, C.J., concurring in part and dissenting in part).

Assuming plaintiff's factual allegations are true, did the officer violate a constitutional right? Plaintiff alleges the officer violated the Fourth Amendment, which prohibits unreasonable seizures. U.S. Const. amend. IV. To state a claim of unlawful detention under the Fourth Amendment, plaintiff must allege facts showing it is plausible that both a "seizure" occurred and that the seizure was "unreasonable." *See Brower v. County of Inyo*, 489 U.S. 593, 599 (1989). This prompts two more questions.

Was the plaintiff seized? "A 'seizure' for the purposes of the Fourth Amendment occurs when a government actor terminates one's freedom of movement through means intentionally applied." *Asten v. City of Boulder*, 652 F. Supp. 2d 1188, 1199 (D. Colo. 2009) (*citing Brower*, 489 U.S. at 596–97). Plaintiff alleges that he was held at Lakeland Behavioral Health Systems for thirty-eight days against his will. Plaintiff clearly alleges the officer seized him for the purposes of the Fourth Amendment.

4

Was the seizure unreasonable?[1] "In determining whether a particular governmental action [was an unreasonable (and thus unlawful) seizure], [courts] inquire first whether the action was regarded as an unlawful . . . seizure under the common law when the Amendment was framed." *Wyoming v. Houghton*, 526 U.S. 295, 299 (1999). Under the common law, "a peace officer was permitted to arrest without a warrant for a misdemeanor or felony committed in his presence as well as for a felony not committed in his presence if there was reasonable ground for making the arrest." *United States v. Watson*, 423 U.S. 411, 418 (1976).

This Court has also addressed how the Fourth Amendment applies when a child is removed from his family:

> In the context of removing a child from his home and family, a seizure is reasonable if it is pursuant to a court order, if it is supported by probable cause, or if it is justified by exigent circumstances, meaning that state officers have reason to believe that life or limb is in immediate jeopardy.

*Heartland Acad. Cmty. Church v. Waddle*, 317 F. Supp. 2d 984, 1091 (E.D. Mo. 2004) (*quoting Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1010 (7th Cir. 2000)), *aff'd*, 427 F.3d 525 (8th Cir. 2005). The same standard for reasonableness applies when a child is seized from a police station where his father is also present. *See id.* (applying the same standard when a child was seized from a private school where her parents placed her).

Assuming plaintiff's factual allegations are true, and drawing all reasonable inferences in his favor, the Court holds plaintiff has alleged an unreasonable seizure. The officer seized plaintiff without a warrant or court order of any kind. The officer had no

---

[1] Because plaintiff alleges the officer seized him without a warrant, the Court will focus only on warrantless seizures.

probable cause to believe plaintiff committed a crime, felony or misdemeanor.[2] Nor did the officer have probable cause to believe plaintiff was in any danger. Finally, there were no exigent circumstances leading the officer to believe plaintiff's life or limb was in immediate danger. This seizure—allegedly for no reason at all—would have been unlawful under the common law, and no child welfare concerns justify it. *See id.* Thus, plaintiff was subjected to an unreasonable seizure, in violation of his Fourth Amendment rights.

Was the right clearly established when the violation occurred? "For a right to be deemed clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Payne*, 749 F.3d at 707 (Riley, C.J., concurring in part and dissenting in part) (*quoting Buckley v. Rogerson*, 133 F.3d 1125, 1128 (8th Cir.1998)). This does not require a case directly on point, "but existing precedent must have placed the statutory or constitutional question *beyond* debate." *Id.* at 708 (*quoting Stanton v. Simms*, 134 S. Ct. 3, 5 (2013) (per curiam)).

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Mullenix*, 136 S. Ct. at 308 (alteration in original) (*quoting Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)). So it is not enough to say plaintiff's Fourth Amendment right to be free from unreasonable seizures was

---

[2] The officer claims he detained plaintiff "under suspicion of pending charges related to the fire or retained custody of [p]laintiff and transferred [p]laintiff to a proper custodial facility to await a determination as to whether [p]laintiff's father was fit to maintain his parental rights[.]" (#12 at 11.) But nothing in the Petition supports this. Nor has the officer presented evidence to support either theory, which he could have done had he moved for summary judgment.

violated—that's too general.  "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'"  *Id.* (*quoting al–Kidd*, 563 U.S. at 742).  The correct question is whether it was clearly established that the Fourth Amendment prohibited the officer's conduct—detaining a child for thirty-six days, without a court order, warrant, probable cause, or exigent circumstances—in this situation.

*Heartland Academy Community Church v. Waddle*, 317 F. Supp. 2d 984 (E.D. Mo. 2004), *aff'd*, 427 F.3d 525 (8th Cir. 2005), shows the right was clearly established.  In *Waddle*, a juvenile officer removed 115 children from a Christian educational facility based on allegations of child mistreatment and abuse.  317 F. Supp. 2d at 1074.  The officer did not notify the school, the children, or the students' parents.  *Id.* at 1094.  Authorities had *ex parte* probable-cause state-court orders to remove some—but not all—of the students who were taken into custody.  *See id.* at 1091, 1093–94.  As for the students seized without a court order, this Court held that the officer "violated the Fourth Amendment when he seized the thirty-five juveniles from Heartland without a court order[, probable cause, or any reason to believe they were in immediate jeopardy of harm to life or limb at the time of the removal]."  Thus, it was clearly established at the time of the seizure that the Fourth Amendment does not permit a juvenile officer to seize a child for thirty-six days without a court order, warrant, probable cause, or exigent circumstances.  A reasonable officer would have understood this conduct violates the Fourth Amendment.

Plaintiff adequately pled the officer violated his clearly established Fourth Amendment right. Thus, the officer is not entitled to qualified immunity for plaintiff's individual-capacity § 1983, and the motion to dismiss is denied for this claim.

### B. State-Law Claim—False Imprisonment

Plaintiff sues the officer in both his official and individual capacity.

#### 1. Official Capacity

The officer argues that plaintiff's official-capacity state-law claim should be dismissed because he is entitled to sovereign immunity. He is correct. "When a cause of action is stated against a state official in his official capacity, the action is one against the state." *Edwards v. McNeill*, 894 S.W.2d 678, 682 (Mo. Ct. App. 1995). Because the State of Missouri enjoys sovereign immunity from common-law claims, a tort claim against an officer in his official capacity is barred unless sovereign immunity has been waived. § 537.600.1 RSMo. Missouri has waived sovereign immunity for claims arising from the negligent operation of motor vehicles and the dangerous condition of a public entity's property. *Id.* § 537.600.1(1)–(2). Plaintiff's claim does not involve motor vehicles or property. Thus, the officer is entitled to sovereign immunity, and plaintiff's official-capacity claim must be dismissed.

#### 2. Individual Capacity

The officer argues that plaintiff's individual-capacity state-law claim should be dismissed because he is entitled to official immunity. Official immunity "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers v. City of*

8

*Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008), *as modified on denial of reh'g* (Sept. 30, 2008). But it does not apply if the public employee was "acting in a ministerial capacity." *Id.* Whether an act is considered "discretionary depends on the degree of reason and judgment required." *Id.* "A discretionary act requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued." *Id.* "A ministerial function . . . is one 'of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed.'" *Id.* (*quoting Kanagawa v. State*, 685 S.W.2d 831, 836 (Mo. banc 1985)). This is a case-by-case decision, and courts consider "(1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity." *Id.*

The officer argues the "act of interviewing [p]laintiff and making a determination to retain custody of [p]laintiff is discretionary in nature." (#12 at 8–9.) That is, the officer claims the conduct at issue is his original decision to take plaintiff into state custody. But this argument misunderstands plaintiff's allegation. Plaintiff alleges the officer held him involuntarily and without any court order, which violates a clear statutory mandate.[3] Even if the officer's seizure initially was lawful, at some point

---

[3] In his briefing, plaintiff claims the officer failed to follow the procedures in § 211.141 RSMo., which governs situations where a child is taken into custody pursuant to § 211.131 RSMo. Yet in his Petition, plaintiff claims the officer filed a petition in the Juvenile Court and alleged that plaintiff needed care pursuant to § 211.031 RSMo. If the officer based his petition on § 211.031,

9

during the thirty-two days the officer waited to file a petition with the Juvenile Court, the seizure became unlawful. And it became unlawful because the officer failed to comply with statutory and procedural mandates—a clear ministerial function.

The current record does not show which subsection in § 211.031 the officer relied on when filing his petition in Juvenile Court. No matter the subsection, there were certain steps the officer required to take after detaining plaintiff, steps not concerning the officer's judgment or opinion. For example, "A juvenile taken into judicial custody pursuant to [§ 211.031.1(1)] shall be released to the juvenile's parent, guardian or custodian or other suitable person, as directed by the juvenile's parent or guardian, unless temporary protective custody is authorized[.]" Mo. Sup. Ct. R. 123.02(c). "Within 24 hours after a juvenile is taken into judicial custody, the court shall order that the juvenile be taken into temporary protective custody or released to the juvenile's parent, guardian or custodian or other suitable person, as directed by the juvenile's parent or guardian." Mo. Sup. Ct. R. 123.03(a). Temporary protective custody "may be authorized only by court order," Mo. Sup. Ct. R. 123.03(b), after a petition is filed. Mo. Sup. Ct. R. 123.04(a). Thus, the officer was required to either release plaintiff or file a petition for temporary protective custody with the Juvenile Court within twenty-four hours of detaining him. Perhaps choosing between the two

---

it seems the requirements (except subsection four) in § 211.131 would not apply. The Court will analyze the discretionary-or-ministerial question assuming the officer based his petition on § 211.031. Even if the officer based his petition on § 211.131, and the requirements in § 211.141 governed, the analysis does not change. Here is the point: when the officer detained plaintiff— no matter his legal basis—various statutory and procedural safeguards were triggered. Once triggered, the officer had no choice but to comply with the appropriate safeguard.

is discretionary, but the act of doing neither after detaining plaintiff was ministerial. The Supreme Court of Missouri Rules are clear: he must do one or the other.

Similarly, "A juvenile taken into judicial custody pursuant to [§§ 211.031.1(2) or (3)] shall be released immediately to the juvenile's parent, guardian or custodian or other suitable person unless detention is authorized[.]" Mo. Sup. Ct. R. 127.02(b). "Within 24 hours after a juvenile is taken into judicial custody under [§§ 211.031.1(2) or (3)], unless the court has ordered or orders that the juvenile be detained, the juvenile shall be released to the juvenile's parent, guardian or custodian or other suitable person." Mo. Sup. Ct. R. 127.06(b). Again, the court can only issue an order for detention after a petition is filed. Mo. Sup. Ct. R. 127.07(a). Thus, the officer was required to release plaintiff or file a petition within twenty-four hours.

Because the officer's act (really, his omission in this case) was ministerial, he is not entitled to official immunity, and the motion to dismiss is denied for this claim.

## IV. Conclusion

Plaintiff's official-capacity claims are dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Smith's motion to dismiss (#11) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that defendant Smith's motion to dismiss (#11) plaintiff's official-capacity claims is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant Smith's motion to dismiss (#11) plaintiff's individual-capacity claims is **DENIED**.

11

So ordered this  23rd  day of January 2018.

                                                                                                 STEPHEN N. LIMBAUGH, JR.
                                                                                                 UNITED STATES DISTRICT JUDGE