UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| GARY REDDEN, JR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:17-cv-00139-SNLJ ) |
| BRANDON SMITH, | ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant's motion for summary judgment (#38). The motion has been fully briefed. For the reasons explained below, the motion will be **GRANTED IN PART**, with the remaining state law false-imprisonment claim **REMANDED** to the Circuit Court for Pemiscot County, Missouri.

**I. BACKGROUND**

On May 17, 2014, the Pemiscot County Sheriff's Department responded to a call about a house fire. A deputy sheriff, Brian James, arrived on scene and witnessed a mobile home "fully engulfed" in flames. James learned that two individuals lived there—plaintiff Gary Redden Jr., a minor at the time, and his father, Gary Redden Sr.

James immediately began investigating what happened. Among other things, he spoke with plaintiff at the scene and quickly "suspected that plaintiff may have set the fire and that plaintiff had done so intentionally." Therefore, James contacted defendant Brandon Smith—a juvenile officer—and "requested that defendant [] conduct an investigation of plaintiff's involvement in the fire."

1

Plaintiff and his father made their way to the Pemiscot County Sheriff's Department for further questioning where they were met by James and defendant. Defendant then interviewed plaintiff about what happened. Plaintiff's father was present. During the interview, plaintiff was told

> [Y]ou're a juvenile, this will stay on your juvenile record if you've done it. That means when you turn seventeen here in so many days … it goes away. If it comes over here, if you make us prove it and all that, and it comes over here to the adult court showing that you did it, it's staying on your adult record forever.

[#40, Ex. D, Video Recording of Plaintiff, 18:16–18:34]. Plaintiff was then told he could "make this very, very easy" or "very hard on [himself] and [his] future." [*Id*. at 19:06–19:12]. Thereafter, plaintiff admitted he started the fire. [*Id*. at 22:00–25:00]. While plaintiff concedes that he was repeatedly told he was not "under arrest," the parties disagree in their briefing whether plaintiff was "in the custody of defendant" at that point. Notably, however, the video interview includes a statement by defendant to plaintiff that he "doesn't want [him] going outside." [*Id*. at 47:35–48:00]. And defendant acknowledged during the underlying juvenile proceeding that plaintiff was in defendant's custody "the minute he walked in[to]" the Sheriff's Department. [#42-1, 16:22-25].

The next day, on May 18, 2014, plaintiff was transported from the Pemiscot County Sheriff's Department to Lakeland Behavioral Health Systems. Once again, the parties disagree on the facts. Their stories diverge on whether plaintiff was directed by defendant to go to Lakeland, or whether plaintiff's father voluntarily committed him into Lakeland's care. However, in the juvenile proceeding, Redden Sr. denied giving consent; instead, he stated he was merely asked by police officials "for a social security number

and a birth day." [*Id.* at 109:17-25, 110:1-25]. Further, defendant admitted during that hearing that he had no records of consent and that he never gained Redden Sr.'s written consent himself, stating "[t]he hospital does all that." [*Id.* at 26:21-25, 27:1-4]. In fact, defendant expressly stated that "it was [his] decision" to send plaintiff to Lakeland. [*Id.* at 17:1-25]. Notwithstanding this record, defendant counters, now, by citing his own unsupported statements to the contrary and explaining, without evidentiary support, that Lakeland "wouldn't take [plaintiff] if [Redden Sr.] didn't [consent]." [*Id.* at 41:4-24].

Factual differences aside, the parties do agree that defendant waited thirty-two days after plaintiff was placed in Lakeland's care before filing a petition with the Pemiscot County Circuit Court seeking authorization to place plaintiff into a mental health facility. That petition was filed on June 19, 2014. Plaintiff remained at Lakeland for a total of thirty-seven days, having been released on June 25, 2014, so that he could appear before the Pemiscot County Circuit Court for an initial hearing. The juvenile court ordered plaintiff to be released into his father's custody at that time. On August 20, 2014, another hearing was held by the Pemiscot County Circuit Court in which it was concluded that "based upon the evidence … the Juvenile Office failed to prove beyond a reasonable doubt that the allegations set forth in the [June 19, 2014] petition are true." Therefore, the claims against plaintiff were ultimately discharged. [*Id.* at 123:7-25].

In this action, plaintiff asserts two individual capacity claims against defendant.[1] He alleges defendant violated his Fourth Amendment right to be free from unreasonable seizures and violated Missouri law by falsely imprisoning him. In essence, plaintiff claims there was no legal justification for his prolonged detention, and he takes particular issue with defendant having acted without a court order. In his motion for summary judgment, defendant argues, in chief, that he "never arrested plaintiff or took him into custody and never required plaintiff to stay at Lakeland," which defendant says makes it impossible for plaintiff to prove the necessary elements of his Fourth Amendment and state law claims.

## II. STANDARD OF REVIEW

Summary Judgment involves the "threshold inquiry of determining whether there is a need for trial." *Walls v. Petrohawk Properties, LP*., 812 F.3d 621, 624 (8th Cir. 2015) (*quoting Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). In other words, summary judgment is appropriately granted if, in viewing the record in a light most favorable to the nonmoving party, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating both the absence of a genuine issue of material fact and his or her entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

---

[1] Plaintiff also filed official capacity claims against defendant. However, those claims were dismissed in view that defendant was entitled to sovereign immunity under the Eleventh Amendment and under Missouri's sovereign immunity statute, § 573.600 RSMo. *See Redden v. Smith*, 2018 WL 513666 (E.D. Mo. Jan. 23, 2018).

Once this initial burden is met, the nonmoving party must then set forth, by affidavit or other rebuttal evidence, specific facts showing that a genuine issue of material fact actually exists. *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034 (8th Cir. 2005); Fed. R. Civ. P. 56(e). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (*quoting Anderson*, 477 U.S. at 247-248, 106 S.Ct. 2505). Thus, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonably jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion to dismiss." *Id*. Moreover, even when a dispute is genuine—such that a jury could reasonably favor either side—it must also be the case that the disputed facts are material in that they "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

**III. ANALYSIS**

    **A. Plaintiff's Fourth Amendment Claim**

Plaintiff brings his Fourth Amendment claim by way of 42 U.S.C. § 1983, which creates a "species of tort liability for the deprivation of any rights, privileges, or immunities secured by the Constitution." *Manuel v. City of Joliet, Ill*. 137 S.Ct. 911, 916

(2017) (internal citations omitted). The Fourth Amendment protects "the right of the people to be secure in their persons … against unreasonable … seizures." U.S. CONST. AMEND. 4. Plaintiff's Section 1983 claim is, thus, anchored to an assertion that his Fourth Amendment rights were violated when he was "detained and restrained" without legal justification and authority.

Defendant first argues he did not detain, restrain, arrest, or otherwise seize plaintiff because no physical force was used and because defendant simply "did not take plaintiff into custody." However, in his reply brief, defendant concedes that plaintiff has proffered "some evidence to show that a seizure occurred." And, as noted, defendant's own testimony in the underlying juvenile proceeding would appear to contradict his current assertion that plaintiff was never seized by him. The record reflects that defendant told plaintiff during the initial interview not to go outside, defendant told the juvenile court that it was his own decision to send plaintiff to Lakeland, and defendant even went so far as to explain that plaintiff was in his custody "the minute he walked in[to]" the sheriff's department. "A person is seized" whenever officials "restrain[] his freedom of movement" such that he is "not free to leave." *Brendlin v. California*, 551 U.S. 249, 254-255 (2007) (noting Justice Stewart's touchstone test that "a seizure occurs if in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave"). Here, there is sufficient evidence in the record to support plaintiff's claim that he was seized by defendant. *See Kaupp v. Texas*, 538 U.S. 626, 632 (2003) (noting that even "an initially consensual encounter … can be transformed into a seizure or detention" and holding a seizure occurred where 17-year-

6

old boy, sitting in an interview room, could not reasonably be said to have been sitting there by choice).

Defendant turns next to the argument that his seizure, even if it occurred, was reasonable under the circumstances. Plaintiff argues to the contrary that the "seizure was unreasonable in that defendant failed to follow the proper procedures for plaintiff's custody," noting "[t]here was no order from the Pemiscot County Juvenile Court for his detention." In support, plaintiff chiefly cites Section 211.141, which requires the returning of a juvenile to the custody of his or her parents within twenty-four hours "unless it has been otherwise ordered by the court." § 211.141.1 RSMo. Certainly, Missouri law permits claims by juveniles against police officials who fail to abide by the "statutory duties" imposed on them by § 211.141. *See, e.g.*, *Trotter v. Sirinek*, 515 S.W.2d 67 (Mo. App. E.D. 1974) (seventeen-year-old plaintiff, who was arrested and compelled to go to juvenile detention center for approximately 46 days against his will, stated a claim for false imprisonment). But, defendant, citing *Collins v. Bellinghausen*, 153 F.3d 591 (8th Cir. 1998), argues the reasonableness factor of plaintiff's Fourth Amendment claim simply cannot be based on a violation of state law. Therefore, it cannot be said that defendant's seizure was unreasonable under the Fourth Amendment merely because he purportedly did not follow Section 211.141.

Defendant is right on that point. *Collins* explained in the context of the Fourteenth Amendment that "a violation of state law, without more, does not state a claim under the federal constitution or 42 U.S.C. § 1983." *Id*. at 596. More recently, and as applied to the Fourth Amendment, the U.S. Supreme Court has expressed concern that "linking Fourth

7

Amendment protections to state law would cause them to vary from place to place and from time to time[.]" *Virginia v. Moore*, 553 U.S. 164, 176 (2008). Therefore, in *Virginia*, it was held that "state restrictions do not alter the Fourth Amendment's protections." *Id*. This has prompted the Eighth Circuit to hold that a general lack of authority under state law to make an arrest (or seizure) does not establish a violation of the Fourth Amendment. *See Johnson v. Phillips*, 664 F.3d 232, 238 (8th Cir. 2011); *U.S. v. Castleman*, 795 F.3d 904, 912 (8th Cir. 2015) (accord).

Section 211.141 aside then, the other focus of plaintiff's Fourth Amendment claim is the unreasonableness of his prolonged detention at Lakeland. Indeed, the Fourth Amendment has special safeguards against prolonged detention. *See Gerstein v. Pugh*, 420 U.S. 103, 115 (1975) (holding the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest [or seizure]."); *Myers v. Potter*, 422 F.3d 347, 353 (6th Cir. 2005) (minor's Fourth Amendment rights violated where police detained him without judicial authorization or valid consent for more than three weeks); *see also Schall v. Martin*, 467 U.S. 253, 275 (1984) (applying Gerstein in the context of juvenile proceedings).

Plaintiff's only evidence supporting defendant's liability for plaintiff's detention at Lakeland is the testimony of Redden Sr., plaintiff's father, that he "could not take [plaintiff] home [from Lakeland] until [defendant] sent a report releasing him." [#42-1, 110:24-25]. Such evidence is hearsay, of course, and does not establish, in itself, any legal obligation for Lakeland—a private entity—to abide by the decision-making of defendant. To be sure, as plaintiff repeatedly highlights, Section 211.141 does not permit

a juvenile officer to detain a child for a period longer than 24 hours. § 211.141.3 RSMo. And only the *juvenile court*—not a *juvenile officer*—can order a child to be detained at a mental health facility such as Lakeland. *See* §§ 211.141.1, 211.151.1(3) RSMo. Thus, it would appear state law prohibits the exact type of control by a juvenile officer over Lakeland that must exist here in order for it to be said that *defendant* continued to "seize" plaintiff for the entire duration of his stay at Lakeland.

In sum, plaintiff has not shown by any competent evidence that defendant was responsible for his prolonged detention. A seizure certainly occurred, but plaintiff conflates his initial detention for questioning with his later detention at Lakeland. The latter may well have been unreasonable. But, plaintiff does nothing to show that *defendant* was legally responsible for this error. As such, summary judgment will be granted in favor of defendant.

### B. Plaintiff's State-Law False Imprisonment Claim

With no constitutional claims left to resolve, and because this case came to the Court on the basis of its original jurisdiction, 28 U.S.C. § 1331, this Court will decline to exercise supplemental jurisdiction over plaintiff's remaining state law claim. *See* 28 U.S.C. § 1367(c)(3) (permitting a district court to decline the exercise of supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction"); *Waters v. Madson*, -- F.3d --, 2019 WL 1567547 at *4, n.6 (8th Cir. Apr. 11, 2019). Therefore, no opinion is rendered on the viability of plaintiff's state-law false imprisonment claim. That issue will be sent back to the state court for further consideration.

9

### C. Application of Qualified Immunity and Official Immunity

This Court also declines to consider defendant's qualified immunity and state-law official immunity defenses. The Fourth Amendment claim has already been resolved, eliminating the need to consider qualified immunity. And the applicability of official immunity under Missouri case law is best left to the state court for consideration when deciding the viability of plaintiff's state-law false imprisonment claim.

### III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment (#38) is **GRANTED IN PART.** Summary judgment is granted to defendant on plaintiff's Fourth Amendment claim.

**IT IS FURTHER ORDERED** that supplemental jurisdiction over plaintiff's state law false imprisonment claim is **DENIED** and, therefore, that claim is hereby **REMANDED** to the Circuit Court for Pemiscot County, Missouri, for further consideration.

A separate Order of Judgment to follow.

So ordered this 10th day of May 2019.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE